UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>      Plaintiff,<br><br>    v.<br><br>LIAMS HOME FURNITURE INC., COLLINS MOVERS INC., and FRANCISE FREDERICK,<br><br>      Defendants. | Civil Action No. 1:22-cv-11711<br><br>October 7, 2022<br><br>**Injunctive Relief Requested** |

## **COMPLAINT**

This case is about employers that physically attacked a former employee because the former employee asserted his right to be paid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA"). Scott Reddin, a former employee of Defendants, asked for his unpaid wages and when Reddin did not receive his wages he told Defendant Francise Frederick that he would file a complaint with the Department of Labor ("DOL"). In response, Frederick, who is the owner and manager of the corporate defendants, assaulted Reddin. Defendants' retaliation well might dissuade reasonable employees, and has in fact dissuaded Reddin, from exercising their statutory rights under the FLSA.

Based on Defendants' unlawful activity, the Secretary of Labor, United States Department of Labor (the "Secretary"), seeks a judgment and order from the Court: (1) awarding unpaid minimum wages plus an equal amount in liquidated damages to Reddin under Sections 6, 15(a)(2), and 16(c) of the FLSA , 29 U.S.C. §§ 206, 215(a)(2), and 216(c); (2) enjoining Defendants from withholding minimum wages that Defendants owe to Reddin under Sections 6, 15(a)(2), and 17 of the FLSA, 29 U.S.C. §§ 206, 215(a)(2), and 217; (3) awarding compensatory

1

and punitive damages to Reddin for Defendants' unlawful retaliation in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), which relief is recognized by Section 16(b), 29 U.S.C. § 216(b); and (4) enjoining Defendants from further violating the FLSA.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2.  Venue is proper in the United States District Court for the District of Massachusetts under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Parties

3.  The Secretary is vested with the authority to file suit to: (1) restrain violations of the FLSA; (2) restrain the withholding of back wages for minimum wage violations; and (3) recover damages for unlawful retaliation. The Secretary is the proper plaintiff for this action.

4.  Defendant Liams Home Furniture Inc. ("LHFI") is a Massachusetts corporation with a principal place of business at 723 Belmont Street, Brockton, Massachusetts 02301, within the jurisdiction of this Court. LHFI operates a furniture store located at the Westgate Mall, 200 Westgate Drive, Brockton, Massachusetts 02301 ("Liam's Furniture Store").

5.  Defendant Collins Movers Inc. ("Collins Movers") is a Massachusetts corporation with a principal place of business at 75 Morse Avenue, Brockton, Massachusetts 02301, within the jurisdiction of this Court. Collins Movers operates a

moving and shipping business.

6. Collins Movers conducts operations at Liam's Furniture Store, including staging shipments and loading delivery trucks.

7. Defendant Francise Frederick owns and manages LHFI and Collins Movers.

8. Frederick and his son are the corporate officers of LHFI.

9. Frederick is the sole corporate officer of Collins Movers.

10. At all relevant times, Frederick actively managed and directed the day-to-day operations of LHFI and Collins Movers.

<u>Defendants and Defendants' Employees Are Covered by the FLSA</u>

11. At all relevant times, Defendants were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as they were engaged in related activities performed through unified operation or common control for a common business purpose.

12. Defendants employed employees in the activities of said enterprise, which is engaged in commerce or in the production of goods for commerce, including having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

13. Defendants' enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

14. At all relevant times, Defendants' employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

15. At all relevant times, Defendants' employees have been engaged in the

procurement, sale, shipment, and/or distribution of goods to and from points outside Massachusetts and in the receipt of such goods from outside Massachusetts.

16. By virtue of these activities, the employees are engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

17. The furniture that Defendants' employees sold to customers, which was housed in Massachusetts or other locations, entered Defendants' inventory after travelling in interstate commerce.

18. Defendants' employees, including Scott Reddin, delivered and/or shipped furniture to customers in locations outside of Massachusetts.

19. Defendants' employees, including Scott Reddin, drove trucks to locations outside of Massachusetts as part of providing moving and shipping services for Defendants' customers.

<u>Scott Reddin's Employment and Defendants' Wage and Hour Practices</u>

*In general*

20. Scott Reddin was employed by Defendants for approximately three weeks in August 2022.

21. During this time, Reddin worked for Defendants first as a furniture mover at Liam's Furniture Store and later as a delivery driver for Collins Movers.

22. Reddin worked as a truck driver making deliveries for Defendants from the start of his second week of work until the end of his employment.

23. As a delivery driver, Reddin's work consisted of loading his truck at the start of the day, driving routes, and unloading his deliveries at their destination.

24. Reddin's rate of pay as a delivery driver was $150 per day.

25. LHFI and Collins Movers distributed paychecks to employees at Liam's Furniture Store every Saturday, which was payday.

26. Defendants told Reddin that he would be paid by check each Saturday for his work during the immediately preceding seven-day period (i.e., the prior Saturday through Friday).

*Defendants' failure to pay Reddin on time and in full
for his second week of work*

27. During his second week of work, Reddin worked Monday through Friday for a total of approximately 35 to 40 hours.

28. At Reddin's pay rate of $150 per day, Reddin was due approximately at least $750 in wages for his second week of work.

29. Payday for Reddin's second week of work was Saturday, August 20, 2022.

30. Reddin travelled to Liam's Furniture Store that day to get his paycheck but found that his check was not there.

31. Defendants did not pay Reddin any wages for his second week of work until on or about August 31, 2022, which was after Reddin stopped working for Defendants.

32. On or about August 31, 2022, Defendant Frederick gave Reddin a $500 check in partial payment of Reddin's wages for his second week of work.

33. Defendants never paid Reddin the final $250 in wages owed to him for that week.

*Defendants' failure to pay minimum wages to Reddin*

34. During his third week of work, Reddin made deliveries Monday through Friday and worked part of Saturday for a total of approximately 56 hours.

35. At Reddin's pay rate of $150 per day, Defendants owed Reddin at least

approximately $750 in wages for his third week of work.

36. Reddin's last day of work for Defendants was Saturday, August 27, 2022.

37. That day was also payday for Reddin's third week of work.

38. On August 27, 2022, Reddin went to Liam's Furniture Store to get his paycheck and to work a shift driving a delivery truck.

39. Reddin went into the store to get his paycheck before he started his shift but found that his check was not there.

40. After finding that his paycheck was not there, Reddin stayed onsite for a time moving furniture and helping a coworker load their delivery truck.

41. He then returned his delivery truck to the warehouse and left without completing his shift.

42. Reddin did not work for Defendants again after leaving the worksite on August 27, 2022.

43. As of August 27, 2022, the day that Reddin stopped working for Defendants, he had not received any wages for his prior two weeks of work.

44. Defendants were required by Sections 6 of the FLSA, 29 U.S.C. § 206, to pay Reddin a minimum wage of at least $7.25 per hour for all the hours that he worked.

45. Defendants did not pay Reddin minimum wages for his third week of work in that Defendants did not pay Reddin any wages for that week.

*Defendants' failure to maintain records required by the FLSA*

46. Defendants failed to make, keep, and preserve adequate and accurate records regarding Reddin's employment.

47. Specifically, Defendants failed to record adequately and accurately, among

other things, the hours that Reddin worked for Defendants.

<u>Reddin's Protected Activity and Defendants' Retaliation</u>

*Reddin's wage complaints to Defendants*

48. In August and September 2022, both during his employment with Defendants and after, Reddin repeatedly complained to Defendants that he had not received the wages that were due to him.

49. For instance, on August 20, 2022, a payday, Reddin complained to Frederick and payroll employees about the paycheck that he should have but did not receive that day.

50. Reddin complained additional times to Defendants during the following week as Reddin still had not received his paycheck.

51. On the next payday, August 27, 2022, Reddin complained to Frederick and payroll employees that Defendants did not have his paycheck for that week or the preceding week.

52. From September 2 to the afternoon of September 6, 2022, Reddin sent multiple text messages to Frederick complaining that he was owed wages and seeking to arrange a time and place to receive those wages.

53. Frederick either did not respond at all or responded evasively to the text messages that Reddin sent between September 2 and the afternoon of September 6, 2022.

54. Frederick did not arrange a time to meet with Reddin and refused to leave the wages for him at Liam's Furniture Store.

55. Reddin drove to Liam's Furniture Store on the afternoon of September 6, 2022, to ask Frederick to pay him the wages that he was due.

56. Reddin brought a friend, Steven Tessier, with him on that day for company and support.

*Frederick assaults Reddin*
*when Reddin states that he will complain to the DOL*

57. After arriving at the store, Reddin approached Frederick and asked for his unpaid wages.

58. Frederick responded that he would pay Reddin later.

59. As Reddin repeated his request for his wages, Frederick became increasingly agitated, raised his voice, and stood toe-to-toe with Reddin in an intimidating manner.

60. Frederick continued to respond that he would pay Reddin later and when he felt like it.

61. Reddin asked for his wages again and stated that he would complain to the DOL if Frederick did not pay him.

62. Frederick responded instantly to Reddin's statement about complaining to the DOL by grabbing Reddin and repeatedly punching him.

63. Frederick then pulled Reddin to the ground.

64. Frederick is much larger than Reddin and put his weight on Reddin.

65. While Reddin was on the ground, Frederick pushed his fingers into Reddin's eyes and wrenched Reddin's face.

66. Reddin's friend Tessier along with a group of employees witnessed Frederick assault Reddin.

67. Frederick eventually let Reddin go.

68. Reddin got away, went to the car with Tessier, and left the property.

69. In the assault, Frederick injured Reddin's eyes, face, elbow, and knee.

*The events following the assault*

70. That evening, Reddin went to a hospital emergency room ("ER") to receive treatment on his eyes.

71. Reddin's eyes were in severe pain when he went to the ER.

72. He was concerned at that time that he might have permanent eye damage or lose his vision.

73. The medical staff treated and released Reddin with a referral to an eye specialist.

74. Reddin still experiences symptoms but is expected to recover completely.

75. Reddin filed a police report while at the hospital but ultimately decided not to press charges against Frederick.

76. Reddin sent additional text messages to Frederick on the evening of the incident and the next day in a further effort to collect his unpaid wages.

77. Frederick responded intermittently but did not pay Reddin his overdue wages for his second or third weeks of work.

78. Because of the assault, Reddin was reluctant to speak more to Frederick, did not want to meet Frederick in person, and was hesitant to press Frederick further for payment of the wages he is owed.

79. It was reasonable that Reddin felt dissuaded from further contact with Defendants to exercise his rights under the FLSA because of Frederick's attack on him and the injuries Reddin sustained.

80. Frederick's assault on Reddin well might dissuade reasonable employees, including Defendants' employees, from asserting their rights under the FLSA.

81. On September 8, 2022, Reddin filed a complaint with the DOL's Wage and Hour Division, concerning his unpaid wages and Defendants' retaliation against him.

## COUNT ONE

### Violation of Sections 6 & 15(a)(2) of the FLSA—Failure to Pay Minimum Wages

82. The Secretary incorporates by reference and re-alleges all the foregoing allegations in this Complaint.

83. Defendants violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2), by not paying Reddin at least the applicable minimum wage for all the hours that he worked.

84. Therefore, Defendants are liable for minimum wage compensation owed to Reddin and an equal amount of liquidated damages under Section 16(c) of the FLSA, 29 U.S.C. § 216(c).

## COUNT TWO

### Violation of Sections 11(c) & 15(a)(5) of the FLSA—Failure to Make & Keep Records

85. The Secretary incorporates by reference and re-alleges all the foregoing allegations in this Complaint.

86. Defendants failed to keep true and accurate records of the hours that Reddin worked in violation of Section 11 of the FLSA, 29 U.S.C. § 211, and the regulations thereunder, specifically 29 C.F.R. Part 516.

## COUNT THREE

### Violation of Section 15(a)(3) of the FLSA—Unlawful Retaliation

87. The Secretary incorporates by reference and re-alleges all the foregoing allegations in this Complaint.

88.     Defendants have violated the provisions of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), by unlawfully retaliating against Reddin, which well might have dissuaded employees and did in fact dissuade Reddin from exercising their rights to complain to Defendants and/or speak freely with the DOL concerning wages due under the FLSA.

## PRAYER FOR RELIEF

At all relevant times, Defendants violated the aforesaid provisions of the FLSA as alleged. WHEREFORE, cause having been shown, the Secretary prays for judgment against Defendants as follows:

1.      For an order pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from prospectively violating the FLSA, including Sections 6, 11, 15(a)(2), 15(a)(3), and 15(a)(5), 29 U.S.C. §§ 206, 211, 215(a)(2), 215(a)(3), and 215(a)(5);

2.      For an order pursuant to Section 16(c) of the FLSA, 29 U.S.C. § 216(c), holding Defendants liable for unpaid minimum wages found due to Reddin plus liquidated damages equal in amount to the unpaid minimum wages found due;

3.      For an order under Section 17 of the FLSA, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from withholding of the amount of unpaid minimum wages found due to Reddin;

4. In the event liquidated damages are not awarded, an order awarding prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

5. For an order awarding compensatory and punitive damages related to Defendants' retaliatory actions under Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3);

6. Awarding the Secretary the costs of this action; and

7. Granting such other and further relief as may be necessary and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Secretary requests a jury trial in this matter on all issues triable by jury.

Respectfully submitted,

| | |
|---|---|
| Post Office Address: | Seema Nanda<br>Solicitor of Labor |
| U.S. Department of Labor<br>Office of the Solicitor<br>John F. Kennedy Federal Building<br>Room E-375<br>Boston, MA 02203<br>TEL: (617) 565-2500<br>FAX: (617) 565-2142 | Maia S. Fisher<br>Regional Solicitor<br><br>Mark A. Pedulla<br>Wage and Hour Counsel<br><br>*/s/ Scott M. Miller*<br>Scott M. Miller<br>Senior Trial Attorney |
| Date: October 7, 2022 | Miller.scott.m@dol.gov<br>MA BBO No. 666509<br><br>U.S. Department of Labor<br>Attorneys for Plaintiff |